UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CASE NO. 5:22-CR-023-H-BQ |
| | § | |
| | § | |
| | § | |
| MIGUEL ANGEL VALDEZ (1), and | § | |
| PABLO VALDEZ (2) | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Co-Defendants Miguel Angel Valdez and Pablo Valdez have both retained attorney James Wooldridge to represent them in this matter. ECF Nos. 25, 44. The Court must therefore determine whether it should permit the dual representation of two defendants who are charged as part of the same alleged criminal scheme. Because serious potential conflicts exist, which are likely to evolve into actual conflicts, the undersigned recommends that the United States District Judge disqualify Mr. Wooldridge from further representation of either Defendant.

### I. Procedural History

#### A. Pending Criminal Charges

Defendants Miguel Angel Valdez and Pablo Valdez, who are cousins (Tr. 5:13–:14, ECF No. 71), were initially charged by criminal complaint in this matter. ECF No. 1. Authorities subsequently arrested Pablo Valdez (ECF No. 12), and Miguel Valdez self-surrendered following the Court's issuance of an arrest warrant. ECF No. 3. The grand jury indicted Defendants on February 9, 2022, charging them with: (1) Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Cocaine, in violation of 21 U.S.C.

§ 846; (2) two counts of Possession with Intent to Distribute 500 Grams or More of Cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii); and (3) Possession of Firearms in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c). ECF No. 54.

### B. The *Garcia* Hearing and Briefing Regarding Conflicts of Interest

On February 9, 2022, the Court held a hearing in accordance with *United States v. Garcia*, 517 F.2d 272 (5th Cir. 1975), wherein both Defendants verbally waived their rights to separate and independent counsel and expressed their desire to be jointly represented by Mr. Wooldridge. *See* ECF Nos. 49, 50; *see also* ECF No. 61. At the hearing, the Court, in fulfilling its independent duty to ensure that criminal proceedings appear fair to the public and are conducted within ethical standards of the profession, specifically reviewed with the parties and counsel case law concerning Defendants' Sixth Amendment right to effective assistance of counsel, which includes the right to select an attorney of their choice. The Court noted that while a presumption exists supporting that choice, (1) the presumption may be rebutted by the showing of an actual or potential conflict of interest, even where the defendant and defense counsel have executed a valid waiver, and (2) under certain circumstances a court may justifiably refuse to accept the waiver.

During the hearing the Court asked counsel whether they believed any actual conflict currently existed. The Government stated its belief that, after reviewing the case law, there was an actual conflict and the potential for other conflicts. Defense counsel stated he had discussed the matter with both clients and that: (1) neither wanted to cooperate with the Government; (2) they presented a united front; and (3) at this point there was no actual conflict. Given the gravity of the question at issue, i.e., ensuring that Defendants' Sixth Amendment right to effective assistance of counsel is adequately protected, the Court advised

the parties it did not want to base its decision on a one-afternoon hearing, and instead gave each side the opportunity to brief the issue of dual representation and possible disqualification.[1]

The Court therefore ordered counsel for the Government and Defendants to file briefs regarding their respective positions as to the dual representation, including whether the Court must disqualify Mr. Wooldridge based on an actual or potential conflict. ECF Nos. 49, 50. The Government timely filed its brief (ECF No. 59) and, after initially failing to substantively address the Court's concerns (*see* ECF Nos. 60, 63), Defendants also filed their response. ECF No. 70.

At Defendants' subsequent arraignment, the Court inquired as to whether any party's position had changed in regard to the existence of an actual conflict, and all replied in the negative. During the resulting discussion on the still-pending question of dual representation, defense counsel expressed the need for additional time to respond substantively on the issue. The Court granted the request and directed the filing of a response by March 1, 2022. ECF Nos. 75, 76. Defense counsel timely filed his supplemental brief. ECF No. 85.

---

[1] Defendants' counsel apparently believes that the Court cannot, or should not, consider the disqualification issue absent a formal motion filed by the Government. *See* ECF No. 60, at 2 ("No 'motion' [to disqualify] properly filed is before the court."); ECF No. 85, at 1 ("Although non-conforming, the government essentially made motion to disqualify counsel from dual representation."). Counsel is mistaken. Even if the Government does not challenge defense counsel's dual representation, the Court must nevertheless ensure that such representation does not run afoul of the Constitution. *See* Fed. R. Crim. P. 44(c)(2) ("The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation."); *United States v. Coleman*, 997 F.2d 1101, 1104 (5th Cir. 1993) (describing as "irrelevant" defendant's contention that government failed to "follow the proper procedure for disqualification" because "[t]he district court had the authority and duty to inquire *sua sponte* into whether counsel should not serve because of a conflict with another client"); *Wheat v. United States*, 486 U.S. 153, 160 (1988) ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.").

## II. Standard of Review

Under the Sixth Amendment, criminal defendants have the right to counsel of their choice. *Wheat*, 486 U.S. at 158–59; *United States v. Jackson*, 805 F.3d 200, 202 (5th Cir. 2015). That right, however, is not absolute and "is limited if [defense] counsel has an actual conflict of interest or a serious potential conflict of interest that may arise during trial." *Jackson*, 805 F.3d at 202. Within this context, a presumption exists "that a defendant is entitled to counsel of choice"—however, the "presumption may be rebutted by a showing of actual or potential conflicts of interest . . . even if valid waivers are acquired by defense counsel." *Id.* at 202–03; *see Wheat*, 486 U.S. at 164 (explaining that although courts "must recognize a presumption in favor of [a defendant's] counsel of choice, . . . that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict").

To ascertain whether an actual or serious potential conflict of interest exists, courts rely on the professional rules of conduct as well as four criteria known as the *Perillo* factors. Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct provides that "a lawyer shall not represent a person if the representation of that person . . . reasonably appears to be or become adversely limited by the lawyer's . . . responsibilities to another client." Tex. Disciplinary Rules Pro. Conduct R. 1.06(b)(2), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2019) [hereinafter Rule 1.06].[2] A lawyer may nevertheless represent a client in the foregoing circumstances if:

> (1) the lawyer reasonably believes the representation of each client will not be materially affected; and

---

[2] Rule 1.7 of the American Bar Association Model Rules of Professional Conduct is also relevant and substantially similar to the Texas Rules. *See In re Am. Airlines, Inc.*, 972 F.2d 605, 609–10 (5th Cir. 1992). It provides, in part, that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." Model Rules of Pro. Conduct r. 1.7(a) (Am. Bar Ass'n 1983). "A concurrent conflict of interest exists if . . . there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client." *Id.*

4

> (2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.

Rule 1.06(c).

In addition, the existence of a conflict of interest depends on:

> (1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter of the multiple representations; (3) how close in time the multiple representations are; and (4) whether the prior representation has been unambiguously terminated, as well as the character and extent of the prior representation (i.e. whether it was transient or insubstantial).

*United States v. Cesario*, No. 3:16-cr-60-M, 2016 WL 5791549, at *2 (N.D. Tex. Oct. 4, 2016) (internal quotation marks and citation omitted); *Perillo v. Johnson*, 205 F.3d 775, 798–99 (5th Cir. 2000).

If the court determines an actual or serious potential conflict is present, the conflict must be waived or eliminated. *See Wheat*, 486 U.S. at 162. Where a defendant knowingly waives the conflict, the court cannot accept the waiver "with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Id.* Further expanding on the nuances of pretrial conflicts, the Supreme Court has explained:

> The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics. Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to

Case 5:22-cr-00023-H-BV    Document 101    Filed 03/21/22    Page 6 of 18    PageID 378

the care with which he conveys all the necessary information to them. *Id.* at 162–63. Because of the mutable nature of dual representation, the comments to Rule 1.06 strongly caution against it: "The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one co-defendant." Rule 1.06 cmt. 3.

District courts have "substantial latitude in refusing waivers of conflicts of interest . . . [including] in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163; *see In re Gopman*, 531 F.2d 262, 266 (5th Cir. 1976) ("[T]he court's discretion permits it 'to nip any potential conflict of interest in the bud.'" (quoting *Tucker v. Shaw*, 378 F.2d 304, 307 (2d Cir. 1967)). While a court must be cognizant of the fact "that the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side . . . trial courts are undoubtedly aware of this possibility, and must take it into consideration along with all of the other factors which inform this sort of a decision." *Wheat*, 486 U.S. at 163.

### III. Analysis

#### A. Parties' Arguments

The Government argues that the Court must disqualify defense counsel from the joint representation due to actual and serious potential conflicts. ECF No. 59, at 1. As to the actual conflict, the Government asserts that Defendants "played different roles in the [purported] drug trafficking conspiracy" and therefore "have directly adverse interests," such that "it would be prudent for each defendant . . . to attempt to minimize their involvement in the conspiracy and assert claims against each other." *Id.* at 5–6. Specifically, the Government

6

observes that "Miguel Valdez is named by two witnesses as a primary supplier of multi-kilogram amounts of narcotics." *Id.* at 5 (citing Ex. 2, ECF No. 59-2). Pablo Valdez, on the other hand, "was the person found in actual possession of several kilograms of narcotics, packaging material, and numerous firearms." *Id.* In the Government's view, "[t]hese conflicting interests would prohibit Mr. Wooldridge from adequately representing both Pablo and Miguel Valdez." *Id.* at 6.

Moreover, the Government contends that the ostensibly different degrees of culpability will hinder defense counsel's ability to explore plea negotiations. *Id.* at 7. The Government asserts that due to "the close relationship between the co-defendants and their alleged criminal conduct, Mr. Wooldridge could not ethically advise either client about" the benefits of cooperation or acceptance of responsibility "without jeopardizing the other" client. *Id.* at 7–8.

The Government alleges that the *Perillo* factors also favor a conflict finding. *Id.* at 8. The Government avers that defense counsel has likely obtained confidential communications from both Defendants, and the subject matter of the joint representation is the same—i.e., factors one and two. *Id.* at 9. Moreover, counsel's representation constitutes an ongoing formal, substantive relationship. *Id.* Thus, the Government believes all four factors "suggest that Mr. Wooldridge has an actual conflict of interest." *Id.*

Conversely, Defense counsel generally asserts that the authority cited by the Government, other than "outlining factors to be considered," provides "very little guidance" in determining whether an irreconcilable conflict exists and "stand[s] only for the proposition that district courts will be given wide latitude in making determination as to whether to accept waivers." ECF No. 85, at 3. Moreover, he strenuously maintains that "[a]ctual conflict

between Co-defendants does not presently exist," and the "[p]otential conflicts have been greatly exaggerated" by the Government. *Id.* at 6. According to counsel, prior to accepting the joint representation, "[c]o-defendants were advised completely as to the implications and machinations of plea offers and the implications thereof." *Id.* at 5. "Such advise [sic] included the dangers of accepting *faux* benefits from the government in return for clients' treachery and dishonor." *Id.*; ECF No. 70, at 4. In light of this discussion, Defendants apparently will not entertain any "offer involving cooperation . . . against each other or anyone else." ECF No. 85, at 4; *see* ECF No. 70, at 3. Defense counsel therefore believes no actual or serious potential conflict will arise during the course of representation unless the Government attempts to offer a plea as a means of "unethically manufactur[ing] a conflict in order to separate Co-defendants from counsel of choice." ECF No. 85, at 5–6; *see* ECF No. 70, at 5 (accusing the Government of improperly engaging the Court in its "divide and conquer strategy" (internal quotation marks omitted)). Counsel for Defendants preemptively impugns the Court's motive in the event it disqualifies him, stating that "should the court intervene on behalf of the government it will give every appearance of the manifestation of bias, absence of neutrality, and unfairness in assisting the government in denying Co-defendants' strategic and tactical advantage in joint representation, and thereby invites disrespect for the integrity of the court." *Id.*

Ultimately, defense counsel believes he represents "two coequal defendants in a straightforward criminal prosecution." ECF No. 70, at 3; ECF No. 85, at 3–4. Counsel assures the Court, however, "that in the unlikely event of a change in either Co-defendant's position, [c]ounsel will . . . withdraw upon manifestation of actual conflict in accordance with ethical requirements," though counsel makes no mention of withdrawing if serious potential

conflict arises. ECF No. 85, at 6–7; ECF No. 70, at 3.

### B. Actual or Serious Potential Conflict

"An 'actual conflict' exists when defense counsel is compelled to compromise his or her duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *Perillo*, 205 F.3d at 781; *see United States v. Apodaca*, 603 F. App'x 303, 304 (5th Cir. 2015) (per curiam) ("An attorney's performance [is] adversely affected by a conflict of interest where counsel could [pursue] a plausible alternative defense strategy or tactic but [chooses] not to do so because of the conflict." (citation omitted)). What constitutes a "serious potential conflict" is not specifically defined in case law and depends on "the facts and circumstances of each case," with the ultimate determination "left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164.

The Government asserts that Defendants' allegedly differing roles in the drug trafficking conspiracy necessarily creates an actual conflict of interest in that counsel cannot minimize each Defendant's role, nor can he explore possible plea negotiations, without violating his duty to one client or the other. ECF No. 59, at 5–8. As an example, the Government points to Defendants' respective detention hearings. *Id.* at 7. Specifically, the Government alleges "[d]efense counsel was ethically prohibited from minimizing Miguel Valdez's role [in the conspiracy] by arguing that Pablo Valdez was more culpable because of Pablo's arrest at the actual stash house." *Id.* And "[c]onversely, Mr. Wooldridge could not minimize Pablo Valdez's culpability by shifting the blame to Miguel Valdez as the leader of the enterprise." *Id.*

The Court disagrees with the Government's characterization of the foregoing *as it relates to the detention hearings*. Even if Defendants had separate, independent counsel, the Court cannot conclude that Defendants would have attempted to minimize their alleged involvement, particularly given defense counsel's early insistence that Defendants had no desire to cooperate with the Government. The undersigned further finds that any such efforts would have had little impact on Defendants' custody status or the effectiveness of their representation. The record reflects that the Court's detention decisions turned primarily on (1) the fact this is a presumption case (*see* 18 U.S.C. § 3142(e)(3)), (2) the weight of the evidence tying both Defendants to the crime alleged, primarily consisting of physical evidence and incriminating statements from co-defendants or cooperating witnesses, (3) Defendants' past criminal history, and (4) Defendants' substance abuse.[3] Under these specific circumstances, an individual Defendant pointing the finger at his co-defendant in an attempt to shift responsibility would have had minimal impact (i.e., no material effect) on the Court's consideration of the statutory factors governing pretrial release.

This analysis notwithstanding, these same circumstances, including Defendants' alleged roles and involvement in the conspiracy, give rise to serious potential conflicts as the case moves beyond the initial pretrial stage[4] and toward trial, presently set for May 9, 2022. As the Government observes, the evidence currently before the Court suggests differing levels of involvement or culpability. Authorities arrested Pablo Valdez at a purported "stash house" where they found large quantities of narcotics (cocaine and marijuana), packaging material,

---

[3] These factors were common to both Defendants and, in the Court's view, sufficient to detain each. Other criteria supporting Pablo Valdez's detention included violations of probation, parole, or supervised release (including engaging in criminal activity while under supervision), failure to appear/evading law enforcement, and lack of a suitable residence. *See* ECF No. 41, at 2–3.

[4] The Court resolved the Government's motion to detain as to both Defendants at the complaint stage or simultaneous with the grand jury's return of the indictment. *See* ECF Nos. 1, 35, 41, 51, 52, 54.

10

firearms, and ammunition. *See* ECF No. 59, at 3; ECF No. 59-5, at 2–3; ECF No. 59-6; ECF No. 1, at 3. Although not present at the time of the raid, Miguel Valdez is identified as having control over the residence (ECF No. 59-2, at 1) and two witnesses have named Miguel Valdez as the principal supplier of multi-kilogram amounts of narcotics. ECF No. 59, at 5, citing 59-2, at 2; ECF No. 59-5; *see* ECF No. 1, at 2–3. Based on these allegations, "each defendant does not stand on equal footing with respect to their potential culpability and opportunity to negotiate a resolution of the pending charges against them." *United States v. Pacheco-Romero*, 374 F. Supp. 3d 1326, 1329–30 (N.D. Ga. 2019) (concluding joint representation of defendants charged with conspiring to possess with intent to distribute methamphetamine created serious potential conflict because defendants played different roles, which "could force defense counsel to forego certain strategic options that might otherwise be pursued if defendants were separately represented" (quoting *United States v. Dempsey*, 724 F. Supp. 573, 578 (N.D. Ill. 1989)).

Moreover, even assuming the evidence suggests more equal participation between Defendants, the nature of the criminal charges in this case—a drug conspiracy—inherently creates serious potential conflicts. *United States v. Olayinka*, No. 3:18-CR-00086-03, 2018 WL 3318953, at *2 (W.D. La. July 5, 2018) ("The potential for unforeseen conflict is even greater in conspiracy cases."). Defendants counter this by arguing that Counts 3 and 4 of the indictment—possession of cocaine and possession of firearms—are based on "illegally seized evidence pursuant to a wholly failed search warrant," which they intend to contest through a motion to suppress. ECF No. 85, at 4; ECF No. 70, at 4. But even assuming Defendants file such a motion *and* prevail, the conspiracy charge would remain, as it is also based on Count 2 of the indictment, alleging possession with the intent to distribute cocaine in the Lubbock

Division, independent of the evidence seized in Amarillo. *See* ECF No. 54; *see also* ECF Nos. 59-1, 59-3, 59-4. As to these allegations Defendants make no assertion that the evidence was illegally obtained, and instead only challenge its veracity. ECF No. 85, at 4; ECF No. 70, at 4.

The Court finds a case cited by the Government, *United States v. Sanchez Guerrero*, 546 F.3d 328 (5th Cir. 2008), to be particularly instructive on this question. In *Sanchez Guerrero*, Eloy Sanchez Guerrero and his brother Vincente Guerrero were named in a fifteen-count indictment alleging, inter alia, conspiracy to possess with intent to distribute cocaine and marijuana and engagement in a RICO conspiracy to distribute controlled substances. *Id.* at 330–31. Both brothers were alleged to hold leadership positions in the enterprise, and one attorney sought to represent the brothers and a cooperating witness. *Id.* at 331. Despite counsel "inform[ing] them of possible conflicts, and obtain[ing] waivers from all three," the district court disqualified counsel for Sanchez Guerrero, "finding that [the attorney] had actual and potential conflicts of interest" in the dual representation. *Id.* Sanchez Guerrero subsequently pleaded guilty[5] to the RICO charge (with the other charges being dismissed) and appealed the district court's disqualification of his counsel of choice. *Id.*

On appeal, Sanchez Guerrero argued the court was required to "defer to his waiver of any conflict of interest." *Id.* at 333. Citing *Wheat*, the Fifth Circuit specifically rejected this view, noting that "no such flat rule can be deduced from the Sixth Amendment presumption in favor of counsel of choice" because courts have an "'independent interest' in ensuring the fairness of trials, even if the defendant has waived any conflicts of interest." *Id.* (citations

---

[5] *See Sanchez-Guerrero v. United States*, No. B-10-53, 2010 WL 11646934, at *1 (S.D. Tex. Dec. 2, 2010) (noting that the court granted the motion to disqualify *October 13, 2006* (not 2007), and defendant pleaded guilty on August 14, 2007).

omitted);[6] *see Jackson*, 805 F.3d at 202–03 (confirming that presumption in favor of a defendant's counsel of choice "may be rebutted by a showing of actual or potential conflicts of interest . . . [and] [t]his is so even if valid waivers are acquired by defense counsel").

Examining facts strikingly similar to those presently before this Court, the Fifth Circuit found multiple *potential* conflicts supporting counsel's disqualification: (1) each brother had an interest in downplaying his culpability while emphasizing the other's; (2) given the length of the conspiracy it was possible evidence favorable to one brother would implicate the other; and (3) joint representation hindered either defendant's ability to testify against the other in exchange for leniency. *Sanchez Guerrero*, 546 F.3d at 334. In the face of these potential conflicts, "[t]he district court certainly did not abuse its discretion" in finding that defense counsel could not adequately represent both brothers. *Id.*

The same potential conflicts exist in this case, to the point that defense counsel's representation of one Defendant "reasonably appears to be or [will] become adversely limited by" his responsibilities to the other, i.e., the representation of each client will be materially affected. *See* Rule 1.06. The circumstances of each Defendant's arrest in relation to the alleged conspiracy, i.e., one at a purported "stash house" with significant quantities of drugs, guns, and material often used for drug distribution, and the other identified by two witnesses as the leader of the multi-kilogram cocaine ring, demonstrate that (1) each Defendant has an interest in downplaying his culpability while emphasizing the other's and (2) evidence exists that implicates one while favoring the other. This creates a serious potential conflict. *See Olayinka*, 2018 WL 3318953, at *3 ("To avoid a conflict for their attorney, defendants would

---

[6] The court further observed that while a waiver of conflicts of interest "certainly operate[s] to waive [defendant's] rights," it does not absolve a court of its obligation to ensure "trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Sanchez Guerrero*, 546 F.3d at 333 (citation omitted).

be barred from making any conflicting claims of relative responsibility.").

The Court also finds that the familial relationship of Defendants—cousins—likely "amplifie[s] the potential for conflicting interests and the need for independent counsel." *United States v. Fowler*, 491 F. App'x 453, 456 (4th Cir. 2012) (per curiam). That is, Defendants' familial relationship may compel them to be loyal to each other,[7] and defense counsel will not be able to fully advise each Defendant of the individual effects of so doing. *See United States v. Gharbi*, 510 F.3d 550, 553–54 (5th Cir. 2007) (describing "the close family relationship" (father-daughter) between co-defendants in a conspiracy case as a serious potential conflict and affirming district court's decision that defendants needed separate and independent counsel); *United States v. Diaz*, No. EP-07-CR-1456-DB, 2007 WL 4205639, at *4 (W.D. Tex. Nov. 27, 2007) (granting government's motion to disqualify attorney who jointly represented co-defendants in drug conspiracy case, finding defendants' "familial tie" (brothers) "may make it difficult to ensure that each client's individual case is conflict-free").

Equally significant is defense counsel's unqualified insistence that his clients will not consider cooperating with the Government. *See* ECF No. 85, at 5. Such a position precludes counsel from exploring with his clients even the option of "possible plea negotiations and the possibility of an agreement to testify for the prosecution" (*Sanchez Guerrero*, 546 F.3d at 334), or other potential avenues for Defendants to obtain leniency. *Cf. Pacheco-Romero*, 374 F. Supp. 3d at 1329 (finding attorneys "could not fulfill their duty to effectively represent all of the defendants by advising one defendant to take a plea deal that would be detrimental to their other clients"); *Olayinka*, 2018 WL 3318953, at *4 (explaining that in representing co-

---

[7] Indeed, defense counsel has indicated that Defendants have a fierce loyalty to each other, another person, or a group. *See* ECF No. 85, at 6 (lamenting the purported "treachery and dishonor" his clients would exhibit should they agree to cooperate with the Government).

defendants in drug conspiracy charges, "counsel has a disincentive to engage in plea negotiations for any of the clients—regardless of how favorable the terms—with the knowledge that counsel cannot be put in the position of having to cross-examine a cooperating client"). As stated by the Government:

> While Mr. Wooldridge asserts that the co-defendants do not presently intend to cooperate against each other, he could not even advise either client on the benefits of cooperation or acceptance of responsibility without betraying his duty of loyalty to the other client. Any plea agreement will require the co-defendants to "give complete and truthful information and/or testimony concerning the defendant's participation in the offense of conviction." Based on the close relationship between the co-defendants and their alleged criminal conduct, Mr. Wooldridge could not ethically advise either client about this provision of the agreement without jeopardizing the other. Without being properly advised on the benefits of a plea or cooperation, the defendants may lose an opportunity to drastically reduce their sentences.

ECF No. 59, at 7–8.

In sum, the stance taken by defense counsel eliminates by default a host of options that would otherwise be available to Defendants (e.g., pleading to a lesser charge, credit for cooperation, credit for acceptance of responsibility, etc.) that would merit, at a minimum, advice and counsel in determining each Defendant's best path forward.[8] *See United States v. Castillo*, No. EP-21-CR-00520-DCG, 2021 WL 3206077, at *3 (W.D. Tex. July 29, 2021) (recommending disqualification of defense counsel where there was the potential that one client could become a witness against the other and the dual representation could "compromise counsel's ability to explore plea negotiations should the client choose to").

---

[8] A brief review of the *Perillo* factors confirms the foregoing analysis and leads the undersigned to find that serious potential, if not actual, conflicts exist. At this stage of the case, defense counsel has certainly obtained confidential information concerning both clients, which, as discussed above, is likely helpful to one client and harmful to another. *Perillo*, 205 F.3d at 798. Further, the dual representation relates to the same drug conspiracy charge, and the representation is ongoing and substantial. *Id.* Thus, all four *Perillo* factors suggest defense counsel's representation of both Defendants creates serious potential conflicts.

Defense counsel attempts to counter this by arguing that because his clients have insisted from the case's inception their unwillingness to cooperate (even before the parties had exchanged full discovery (*see* ECF Nos. 83, 84)), any attempt by the Government to negotiate with Defendants amounts to the unethical manufacturing of a conflict to deprive Defendants of their counsel of choice. ECF No. 70, at 5–6. The Court disagrees. In the undersigned's experience, the majority of cases before this Court result in a plea deal between the Government and defendants. To conclude, without evidentiary support, that the Government's potential offer of a plea in this case would somehow constitute an unethical deviation from standard practice is not only inaccurate but unwarranted.[9] Other than his conclusory allegations, defense counsel has presented no facts demonstrating that the Government is attempting to manufacture a conflict.

The Court does not discount counsel's contention that Defendants' "united front" could result in an acquittal; however, that is not the question to be decided. The issue is whether the individual Defendant's right to effective assistance of counsel is preserved, i.e., that his attorney's representation is not and will not become adversely limited by the attorney's responsibilities to another client. Constitutionally sufficient representation would necessarily include not only advice on how to obtain an acquittal (as well as its attendant risks), but also guidance regarding other potential options that defense counsel in this case has eliminated from the get-go in an apparent effort to avoid disqualification.

---

[9] Defense counsel's challenge to the Court's motivation in considering his disqualification, i.e., if the Court disqualifies him "it will give every appearance of the manifestation of bias, absence of neutrality, and unfairness in assisting the government in denying Co-defendants' strategic and tactical advantage in joint representation, and thereby invite[] disrespect for the integrity of the court" (ECF No. 70, at 5), is similarly misguided and potentially contemptuous. The law makes clear the Court's obligation in this regard and the undersigned's findings and conclusions set forth the Court's application of that law to the circumstances presented herein. Should counsel wish to challenge the Court's recommendation for *any* reason, he may seek review before the District Judge.

## IV. Conclusion

Dual representation is not per se violative of the Constitution. *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978); *see Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (opining that "a possible conflict inheres in almost every instance of multiple representation"). The fact, however, that Mr. Wooldridge jointly represents cousins in an alleged conspiracy purportedly responsible for distributing multi-kilogram quantities of cocaine creates serious potential conflicts that are likely to manifest into actual conflict(s) as this case progresses. These serious potential conflicts outweigh Defendants' desire to have Mr. Wooldridge represent them. *Gharbi*, 510 F.3d at 553 ("[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.") (alteration in original) (internal quotation marks and citation omitted)). Disqualification is therefore necessary.

## V. Recommendation

Based on the foregoing, the undersigned recommends that the United States District Judge disqualify Mr. Wooldridge from representation of Miguel Valdez and Pablo Valdez.

## VI. Right to Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Crim. P. 59(a). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed

determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: March 21, 2022.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE