UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MIGUEL ANGEL VALDEZ (1), and<br>PABLO VALDEZ (2),<br><br>    Defendants. | No. 5:22-CR-023-H-BQ |

## MEMORANDUM OPINION AND ORDER

A grand jury indicted cousins Miguel Angel Valdez and Pablo Valdez on various narcotics-related charges. They both retained James Wooldridge to jointly defend them. Magistrate Judge D. Gordon Bryant, Jr. conducted a *Garcia* hearing to determine whether Mr. Wooldridge could represent the cousins consistent with both the Sixth Amendment and various ethical obligations. At the hearing, the government voiced its concern that actual conflicts of interest existed between the cousins and that there was the potential for future conflicts as the case progressed. The cousins disagreed, noting that they were united in their decision to not cooperate and to vigorously contest the charges against them. Judge Bryant ordered briefing, heard argument, and then permitted supplemental briefing before making findings, conclusions, and a recommendation that Wooldridge be disqualified.

The cousins made timely objections to that recommendation, and the government has responded. Having considered the underlying facts, the governing law, and the parties' filings, the Court accepts Judge Bryant's findings, conclusions, and recommendations. James Wooldridge is disqualified from representing Miguel Angel Valdez or Pablo Valdez.

1.     **Factual and Procedural Background**

A criminal complaint charged cousins Miguel Angel Valdez and Pablo Valdez with possession with intent to distribute cocaine and conspiring to do the same. Dkt. No. 1. Pablo was arrested on a warrant, and Miguel self-surrendered. *See* Dkt. Nos. 3; 43. A grand jury subsequently returned an indictment charging both Miguel and Pablo, as well as others, with one count of conspiracy to distribute 500 grams or more of cocaine, two counts of possession with intent to distribute 500 grams or more of cocaine, and one count of possession of firearms in furtherance of a drug trafficking crime. Dkt. No. 54. Neither defendant is named independently of the other in any count of the indictment. *Id*.

Pablo made his initial appearance on January 24 before Magistrate Judge Reno in Amarillo. Dkt. No. 14. The next day, James Wooldridge entered his appearance as Pablo's retained counsel. Dkt. No. 24. Miguel's initial appearance on the complaint took place before Judge Bryant on January 31; Wooldridge appeared alongside Miguel at that hearing. At his initial appearance, Judge Bryant informed Miguel that Wooldridge had been retained by Pablo and inquired as to the relationship between Pablo and Miguel. *See* Dkt. No. 71. Judge Bryant ensured that Miguel understood that potential conflicts might arise before stating that he would "go over that with [him] in some detail in the future." *Id*. at 5. Owing to bad weather, Judge Bryant continued Miguel's initial appearance and detention hearing until February 9. *Id*. at 9.

At the February 9 hearing, Judge Bryant held a *Garcia* hearing and ensured that both defendants understood their right to unconflicted counsel.* *See* Fed. R. Crim. P. 44(c)(2) (outlining the Court's duty of inquiry when defendants are jointly represented). Both Miguel and Pablo confirmed that they understood the risks of joint representation. Dkt. No. 72 at 9–13. Judge Bryant then directed the parties to file briefs on the issue of joint representation—"I don't want to make my decision just based on a one-afternoon hearing." *Id*. at 14. Judge Bryant also directed the defendants to address a Fifth Circuit case that the government had previously identified as factually analogous and, in the government's view, strongly in favor of disqualification. *Id*. at 13–14 (citing *United States v. Sanchez Guerrero*, 546 F.3d 328 (2008)). Judge Bryant then added: "I'll be honest with you. Just the scenario seems rife with, if there's no actual conflict today, as the case proceeds, it seems that there's just multiple opportunities for such conflicts to arise." *Id*. at 14. Judge Bryant directed the parties to file briefs on the subject of joint representation and, after a false-start by the defendants, both sides complied. Dkt. Nos. 59 (government's brief); 63 (order to show cause); 70 (defendants' brief); 85 (defendants' supplemental brief); 86 (FCR recommending sanctions against Wooldridge for failing to comply with a court order); 106 (order adopting FCR and imposing sanctions).

Having considered the parties' submissions, Judge Bryant issued findings, conclusions, and a recommendation that Wooldridge be disqualified. Dkt. No. 101. The

---

* "If a defendant chooses to proceed with representation by counsel who has a conflict of interest, a district court must conduct what is commonly known as a 'Garcia hearing' to ensure a valid waiver by the defendant of his Sixth Amendment right." *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (citing *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir.1975), *abrogated on other grounds*, *Flanagan v. United States*, 465 U.S. 259, 263 (1984)).

defendants timely objected (Dkt. No. 111), and the government has responded (Dkt. No. 124), so the FCR is ripe.

## 2.   Governing Law

The Court reviews uncontested portions of the FCR for plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1); *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 502 (5th Cir. 2020).  But the Court must review de novo any part of the FCR that has been properly objected to.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59 & advisory committee's note to 2005 amendment; *cf.* Fed. R. Civ. P. 72(b)(3).

"[T]he essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."  *Wheat v. United States*, 486 U.S. 153, 159 (1988).  While "there is a presumption in favor of a defendant's counsel of choice, . . . that presumption may be overcome by an actual conflict of interest, or by a showing of a serious potential for conflict."  *United States v. Gharbi*, 510 F.3d 550, 553 (5th Cir. 2007) (citing *Wheat*, 486 U.S. at 164).  "This is true even when a defendant expresses a desire to waive the potential conflict."  *Id*.

A waiver does not end the matter, however, as "the district court has an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" *Id*. (quoting *Wheat*, 486 U.S. at 160).  "If a court justifiably finds an actual conflict of interest, 'there can be no doubt that it may decline a proffer of waiver.'"  *Id*. (quoting *Wheat*, 486 U.S. at 162).  "Unfortunately for all concerned, a district court must pass on [this]

issue . . . not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." *Wheat*, 486 U.S. at 162. Because "the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict," *id.* at 162–63, the Court must consider whether subsequent proceedings may give rise to disqualifying conflicts.

"[M]ultiple representation of criminal defendants engenders special dangers of which a court must be aware." *Wheat*, 486 U.S. at 159. "A conflict of interest may 'prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another.'" *United States v. Sanchez Guerrero*, 546 F.3d 328, 333–34 (5th Cir. 2008) (quoting *Wheat*, 486 U.S. at 160). Such conflicts may also preclude a defense attorney from "exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution." *Id.* (quoting *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978)). Nevertheless, given the centrality of a defendant's right to choose his counsel, the Court must guard against the possibility "that the Government may seek to 'manufacture' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side." *Wheat*, 486 U.S. at 163.

Whether a conflict exists "is [a] highly-fact sensitive" determination. *United States v. Infante*, 404 F.3d 376, 392 (5th Cir. 2005). The Court determines "whether the integrity of the judicial system has been undermined by reference to the current national standards of legal ethics." *United States v. Vaquero,* 997 F.2d 78, 90–91 (5th Cir. 1993) (citing *In re Dresser Indus., Inc.,* 972 F.2d 540, 544 (5th Cir. 1992)). In making that determination, the Court

looks to the Texas Disciplinary Rules of Professional Conduct, the ABA's Model Code of Professional Responsibility and Model Rules of Professional Conduct, and the Restatement (Third) of Law Governing Lawyers.  *See In re Am. Airlines*, 972 F.2d 605, 610 (5th Cir. 1992) (looking to the ABA's work); *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995) ("[T]he Restatement of The Law Governing Lawyers is indicative of the national consensus . . . within the profession.").  In particular, Model Rule 1.7 and Restatement § 129 provide instructive guidance.

The Fifth Circuit has found four factors particularly relevant to evaluating whether a conflict is disqualifying: "(1) whether the attorney has confidential information that is helpful to one client but harmful to the other client; (2) whether and how closely related is the subject matter of the multiple representations; (3) how close in time the multiple representations are; and (4) whether the prior representation has been unambiguously terminated."  *United States v. Burns*, 526 F.3d 852, 856 (5th Cir. 2008) (citing *Infante*, 404 F.3d at 392).

"'A conflict exists when defense counsel places himself in a position conducive to divided loyalties.'"  *United States v. Garcia-Jasso*, 472 F.3d 239, 243 (5th Cir. 2006) (quoting *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985)).  Put another way: "As a general rule, a conflict *exists* when defense counsel allows a situation to arise that tempts a division in counsel's loyalties."  *United States v. Hernandez*, 690 F.3d 613, 618 (5th Cir. 2012) (emphasis added and internal quotation marks omitted).  But joint representation does not always present a conflict, and the mere possibility that one defendant might cooperate against the other does not, without more, constitute a conflict.

3.  Analysis

The Court begins its review—as Judge Bryant did—with the presumption that a defendant's chosen counsel is the best person to represent that defendant. *See United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006). Disqualification is a grave step that should be taken only if the facts clearly warrant impinging upon the defendant's right to representation of his choice. *Id.* at 148–52 (holding that erroneous disqualification amounts to a structural error). Regrettably, the Court agrees with Judge Bryant that such a step is necessary here.

A.  The Objections

The defendants have filed six objections to Judge Bryant's FCR. Most of the objections amount to rehashes of arguments they made, or should have made, to Judge Bryant. *See* Dkt. No. 124 (response from the government noting the same). None of the objections points to an error Judge Bryant made in applying the facts before him to the governing law. *See* Dkt. No. 111. Accordingly, the Court would be well within its rights to decline to consider them. *See Nolen-Davidson v. Comm'r, Soc. Sec. Admin.*, No. 4:20-CV-1085-P, 2021 WL 4476763, at *1 (N.D. Tex. Sept. 30, 2021) (Pittman, J.) (explaining that conducting de novo review of previously rejected arguments undermines the efficiency gains that were the goal of the Federal Magistrate's Act); *see Thomas v. Arn*, 474 U.S. 140, 153 (1985) ("It seems clear that Congress would not have wanted district judges to devote time to reviewing magistrate's reports except to the extent that such review is requested by the parties or otherwise necessitated by Article III of the Constitution."). Nevertheless, in an abundance of caution, the Court addresses each objection. All are overruled.

### i. Objection 1: Conspiracy Charge & Lack of Evidence

The defendants have filed motions to suppress the evidence supporting Counts 3 and 4—one of the cocaine charges and the 924(c) charge. Dkt. Nos. 112, 113. Judge Bryant noted that, even if the defendants are successful in their challenges to that evidence, Counts 1 and 2 remain—the conspiracy charge and the other cocaine charge. Dkt. No. 101 at 11–12. The defendants object to that part of Judge Bryant's FCR, writing that subsequent discovery has given them reason to challenge the validity of the searches that led to the discovery of the cocaine at issue in Count 2. Dkt. No. 111 at 1–2. If they were to succeed in such a motion, there would be little evidence to support Count 2 and, therefore, no predicate for the conspiracy charge, they write. *Id.* at 2.

The Court overrules this objection. For starters, the codefendant whose arrest led to the discovery of the cocaine giving rise to Count 2, Luis Juarez, has pleaded guilty. Dkt. Nos. 90 (plea agreement); 126 (order accepting report and recommendation regarding plea agreement). Second, Miguel and Pablo lack standing to challenge the validity of Juarez's arrest. *See* Wayne R. LaFave, Search & Seizure § 11.3(*i*) (citing, among others, *Alderman v. United States*, 394 U.S. 165, 174 (1969) (holding that Fourth Amendment rights "are personal rights [that] may not be vicariously asserted") and *United States v. Padilla*, 508 U.S. 77, 82 (1993) ("Participants in a criminal conspiracy may have [privacy] expectations or interests, but the conspiracy itself neither adds to nor detracts from them.")). Because the defendants' hypothetical motions challenging Luis Juarez's arrest could not materially affect their prospects, they have no bearing on Judge Bryant's or the Court's analysis.

### ii. Objection 2: Familial Relationship

Judge Bryant noted that Miguel and Pablo's familial relationship "'amplifies the potential for conflicting interests and the need for independent counsel.'" Dkt. No. 101 at 14 (quoting *United States v. Fowler*, 491 F. App'x 453, 456 (4th Cir. 2012)) (cleaned up). The defendants do not contest that they are, in fact, cousins. Instead, the defendants argue that the finding is "simply not logically supported." Dkt. No. 111 at 2. The familial connection exists no matter who represents the cousins, they write. *Id*. The defendants also object that Judge Bryant "demonstrates a failed understanding of just what it means to 'fully advise' any defendant" because "the role of 'fully advising' clients is to establish the parameters of the situation, the available options, and the consequences attendant to exercising each option." *Id*.

This objection is also overruled. The defendants point to no authority that their familial ties must be ignored or weigh against disqualification. Indeed, Judge Bryant cited a number of examples where the Fifth Circuit and other courts have pointed to familial ties as an aggravating factor. Dkt. No. 101 at 14. The Court finds these examples persuasive. *See, e.g.*, *Gharbi*, 510 F.3d at 553–54. An attorney tasked with representing two blood relations faces even greater obstacles than usual when explaining the costs and benefits of various decisions. The problem is not, as the defendants suggest, that they will be loyal to one another, but that their attorney will withhold or temper advice as a result of the codefendant's understandable affection for each other. And "in a case of joint representation of conflicting interests[,] the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial negotiations and in the sentencing process." *Holloway v. Arkansas*, 435 U.S. 475, 490 (1978).

Finally, the Court disagrees with defense counsel's assertion that Judge Bryant acted illogically and does not understand what it means to advise clients.

### iii. Objection 3: Refusal to Negotiate

Judge Bryant observed that Wooldridge has insisted that the defendants will not consider negotiating with the government. Dkt. No. 111 at 2–3. The defendants object to this conclusion on the grounds that Wooldridge is beholden to the defendants' decision and "will not undertake to persuade Defendants otherwise." *Id.* at 3.

But therein lies the rub. Wooldridge has no incentive to discuss the benefits a plea might provide to one defendant because doing would likely be detrimental to the other. If the defendants were separately represented, there would be no such concern, and Wooldridge would be able to advise his client as to all of the paths open to him. The very real possibility that, in this conspiracy case where the defendants are accused of playing different roles, Wooldridge will temper his zealousness in order to keep the side together poses an unacceptable risk to the integrity of the judicial process and the defendants' Sixth Amendment rights.

### iv. Objection 4: Whose position is it?

As a corollary to the observations discussed in Objection 3, Judge Bryant noted that "the stance taken by defense counsel eliminates by default a host of options that would otherwise be available to defendants." Dkt. No. 101 at 15. The defendants object that "[i]t is not the stance taken by defense counsel at issue. It is the stance of the Defendants, individually and collectively." Dkt. No. 111 at 3. Any error of nomenclature that Judge Bryant may have made—the Court doubts one exists at all—is immaterial to the soundness of Judge Bryant's analysis.

### v. Objection 5: Eliminated Options

The defendants object to Judge Bryant's observation that assistance that comports with the Sixth Amendment requires advice on nontrial dispositions, options that "defense counsel in this case has eliminated from the get-go." Dkt. No. 111 at 3 (quoting Dkt. No. 101 at 16).

This objection is overruled. Although it is difficult to discern what error in Judge Bryant's FCR the defendants object to—the objection is largely atmospheric—the Court concludes that Judge Bryant's statement does not affect the analysis as to whether a serious potential conflict exists. The issue Judge Bryant rightly identifies is that defense counsel seems to have presented his clients with something of a Faustian bargain: If you want to negotiate, you are going to need to find a new lawyer. *See* Dkt. No. 111 at 4 ("Defendants were advised from the get-go that it was their option to decide and that if either were to deviate from their chosen option, that Counsel would have to withdraw."). Whether that is sufficient, by itself, to constitute a serious potential conflict of interest or whether such a bargain is the risk all jointly represented defendants run is beside the point. In this case, Judge Bryant's observation is both correct and valuable when determining how the specific facts of this case give rise to a need for disqualification.

The Court pauses to respond to Wooldridge's assertion that he "doubts very seriously that departure from this matter at any future point would meet with any dispute from either the Government or the Court." Dkt. No. 111 at 4. This Court has an exceptionally busy criminal docket. The withdrawal of counsel imposes, typically, at least three months of delay. While the Court would always permit withdrawal upon a showing of a conflict, it does so because if its duty to ensure each defendant's Sixth Amendment

rights are respected—not because it enjoys dawdling. Indeed, Rule 44(c)'s requirement that joint representation be addressed at the outset of a case reflects the need to do things right the first time out of respect for the defendant, the government, and others seeking a swift resolution of the charges against them.

### vi. Objection 6: The Bottom Line

The "Defendants reject the recommendation of the United States Magistrate." Dkt. No. 111 at 4. "Counsel again reassures the Court that Counsel will withdraw of his own volition" if an actual conflict presents itself. *Id*. The defendants also object to Wooldridge's complete disqualification—that is, his disqualification from representing either Valdez cousin. *Id*. But it requires little effort and no law degree to recognize that an attorney in possession of another defendant's confidential information presents a patent ethical issue and an unacceptable risk to the integrity of the judicial system. In any event, "[i]t is well-settled . . . that a criminal defendant's right to his chosen attorney may be outweighed by a serious potential for conflict due to the attorney's prior representation of other defendants charged in the same criminal conspiracy." *United States v. Algee*, 309 F.3d 1011, 1013 (7th Cir. 2002); *Perillo v. Johnson*, 205 F.3d 775, 798 (5th Cir. 2000) ("A conflict of interest may exist by virtue of the fact that an attorney has confidential information that is helpful to one client but harmful to another."). This final objection is, like the others, overruled.

## B. The Balance of the FCR

A district court reviews unobjected to portions of an FCR for plain error. None exists in Judge Bryant's conclusion that the presumption in favor of a defendant's counsel of choice has been outweighed by, if not an actual conflict, the serious risk of potential future conflicts in this case.

Here, one defendant (Miguel) is identified by witnesses as the supplier of large quantities of drugs, while the other (Pablo) was the one found in possession of large quantities of drugs and firearms. *See* Dkt. No. 59 at 5. That presents an obvious and serious potential conflict of interest. Miguel has every incentive to pin everything on Pablo, who was found with the drugs. Pablo, for his part, has every incentive to say that he was just holding onto the drugs for Miguel. What would such a trial even look like? "Representing co-clients also complicates the process of coordinating trial strategy, particularly if the roles of the defendants in the enterprise were different." Restatement (Third) of Law Governing Lawyers § 129 cmt. c (citing *Foxworth v. Wainwright*, 516 F.2d 1072 (5th Cir. 1975)). The different roles each is alleged to have played in the conspiracy yields different potential culpabilities and, as a result, different interests. A conflict of interest is present when a defendant "'stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a codefendant whom counsel is also representing.'" *United States v. Rico,* 51 F.3d 495, 509 n.47 (5th Cir.1995) (quoting *United States v. Holley*, 826 F.3d 331, 334 (5th Cir. 1987)).

Caselaw confirms that Wooldridge's disqualification is appropriate. Consider the Fifth Circuit's analysis in *Sanchez Guerrero*, where two brothers were charged with a overseeing a twenty-year drug trafficking conspiracy and sought to be jointly represented:

> Each brother would have an interest in downplaying his own culpability while emphasizing the responsibility of the other in the organization. Given the length of the conspiracy, it is possible that evidence implicating one of the defendants in some of the transactions involved would have been favorable to the other defendant. And a joint representation would have hindered the ability of either defendant to testify against his brother in exchange for a reduced sentence.

546 F.3d at 334. The Fifth Circuit concluded that the "district court certainly did not abuse its discretion in determining that [counsel] could not adequately represent both men at trial." *Id.* And just as Judge Bryant found *Sanchez Guerrero* highly instructive (*see* Dkt. No. 101 at 12), so too does this Court. Other analogous cases confirm this conclusion. *See United States v. Almany*, 621 F. Supp. 2d. 561, 569–76 (E.D. Tenn. 2008) (finding counsel's joint representation of defendant and an alleged co-conspirator in separate drug-related prosecutions created a conflict of interest, such that defendant was deprived of effective assistance because counsel appeared to make no real efforts or have any interest in pursuing plea agreement for the defendant and because counsel was precluded from arguing that the defendant's role in the conspiracy was minor in comparison to co-conspirator's role); *United States v. Pachecho-Romero*, 374 F. Supp. 3d. 1326, 1329–31 (N.D. Ga. 2019) (disqualifying a law firm as to all defendants charged in drug-trafficking conspiracy because the complaint described differing roles each defendant played in the alleged conspiracy, which created a conflict because the defendants stood on unequal footing regarding potential culpability and an opportunity to negotiate a resolution of charges).

As a final note, the Court has no reason to believe that the government manufactured the need for disqualification. Indeed, the government did not initially believe there was a conflict. Dkt. No. 72 at 8. Abiding by his duties under Rule 44, Judge Bryant—not the government—instigated the inquiry into whether Wooldridge could represent Miguel and

Pablo. And the defendants offer no evidence that the government has taken any step that would foment a conflict. Their unsupported allegation (Dkt. No. 85 at 6) that the government's efforts to negotiate with the defendants amounts to such an effort is as baseless as it is self-defeating: the fact that the government wants to negotiate with one of the defendants highlights the impropriety of Wooldridge's continued representation of both defendants.

*     *     *

Wooldridge's continued representation of both Miguel and Pablo poses an intolerable risk to both the defendants' rights to effective counsel and the integrity of the judicial system. And because he has already represented both men and gained privileged information in the process, his future representation of either Valdez in this case would present another conflict of interest. Thus, Wooldridge may not, consistent with the Sixth Amendment and his ethical obligations, represent either Miguel Angel Valdez or Pablo Valdez in connection with the pending indictment.

**4.    Conclusion**

For the foregoing reasons and for those set forth in Judge Bryant's comprehensive FCR, James Wooldridge is disqualified from representing either Miguel Angel Valdez or Pablo Valdez in this case. The Court will issue an order referring the issue of the appointment or retention of new counsel to the Magistrate Judge.

Shortly before this opinion issued, the government made an unopposed motion to continue trial in this case. Dkt. No. 133. For the reasons set forth in the motion, the motion is granted. The Court finds that, in light of the disqualification of the defendants' counsel, a three-month continuance is in the interests of justice. 18 U.S.C. § 3161(h)(1)(D).

Failure to grant a continuance would deny counsel for the defendant—who has yet to be appointed or enter an appearance—the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.  18 U.S.C. § 3161(h)(7)(B)(iv).  The speedy-trial clock shall remain tolled during this continuance because the ends of justice—ensuring the defendants are effectively represented—are served by the delay.  *See* 18 U.S.C. § 3161(h)(7)(A).  The following deadlines, originally set out in the Court's scheduling order (Dkt. Nos. 81; 82) shall now control this case:

Trial is rest to 9:00 a.m. on August 1, 2022 in the United States District Court, Courtroom C-216, 1205 Texas Avenue, Lubbock, Texas.  The government shall furnish its discovery by no later than June 27, 2022.  The defendants shall furnish their discovery by no later than July 5, 2022.  Pretrial motions are due by July 5, 2022; responses to pretrial motions are due by July 18, 2022.  Expert designations are due July 5, 2022.  Responsive expert designations are due by July 11, 2022.  Expert objections are due by July 18, 2022.  The trial materials set forth in paragraph 8 of the Court's original scheduling orders are now due on July 25, 2022.  The final pretrial conference will take place at 8:30 a.m. on August 1, 2022.

So ordered on April 28, 2022.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE